**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, BRADLEY UNIVERSITY CHAPTER et al, <br>          Plaintiffs, <br><br> v. <br><br> BRADLEY UNIVERSITY, <br>          Defendant. | Case No. 1:25-cv-01223-JEH-RLH |

**Order**

Now before the Court is the Defendant's Motion to Dismiss (D. 9) and Motion for Stay of Discovery (D. 14).[1] For the reasons set forth *infra*, the Motion to Dismiss (D. 9) is denied and the Motion for Stay of Discovery (D. 14) is granted.

**I**

The Plaintiffs commenced this putative class action on June 4, 2025. (D. 1). On September 2, 2025, the Defendant Bradley University ("Bradley") filed a Motion to Dismiss and Memorandum in Support (D. 9 & 10) to which the Plaintiffs' filed their Response on September 16, 2025. (D. 11). Subsequently, the Defendant filed its Reply on September 24, 2025. (D. 13). The matter is now fully briefed.

**II**

According to the Complaint, in "late July 2023, University President Stephen Standifird announced that the University was facing a $13M fiscal budget shortfall and a large structural deficit." (D. 1 at ECF p. 9). Subsequently, "President Standifird announced that to resolve this budget discrepancy, $10 million in permanent savings

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

from Academic Affairs had to be identified by the end of the Fall 2023 semester." *Id.* To address that discrepancy, at "the August 17, 2023 Special Meeting, the University Senate voted to create a committee called the Faculty Members of the Senate Executive Committee ("FMSE") and charged its six members with identifying recommended budget cuts."[2] *Id.* "President Standifird promised publicly that the University would follow the recommendations of the FMSE, provided it located $10 million in savings within Academic Affairs." *Id.* However, the FMSE arrived at recommendations only resulting in approximately $4.6 million in savings, but the FMSE still communicated its recommendations to President Standifird. *Id.* at ECF p. 10. The Plaintiffs allege the FMSE consultation was "merely *pro forma*" because President Standifird "initiated a completely separate process for arriving at the decision of what cuts to make." *Id.* Thereafter, on "November 6, 2023, President Standifird announced the possible elimination of 17 programs, dismissal of 47 faculty members, and the elimination of 21 faculty positions 'through attrition.'" *Id.*

Following this announcement, in November and December of 2023, "Bradley University announced the termination of the employment of dozens of its faculty members" and "broke a number of promises it had made to its faculty through the policies incorporated into their employment contracts". *Id.* at ECF p. 1-2.[3] Based on the allegations against Bradley, the Plaintiffs filed suit. They are comprised of "a) individual faculty members and putative class representatives whose employment was terminated, b) an individual faculty member and putative class representative who was precluded from participating in the shared governance of the institution, and c) an association of faculty members whose ability to protect and further faculty academic freedom, due process rights, and shared governance is severely limited due to the faculty terminations." *Id.* at ECF p. 2. "Plaintiffs Azab (Sociology), Calderon

---

[2] Plaintiffs alleges that Professor Timm served on the FMSE. (D. 1 at ECF p. 9).

[3] "On information and belief, in November and December of 2023, the administration did then decide to discontinue 15 programs, informed approximately 38 faculty members ('the terminated faculty') that their employment would be terminated, and eliminated 23 faculty positions 'through attrition.'" (D. 1 at ECF p. 10).

(Spanish), Kirk (Mathematics), Smith (Business Law) and Yee (Mathematics) are current and former faculty members of Bradley University who were notified in November and December of 2023 that their employment would be terminated." *Id.* at ECF p. 3. They "comprise part of a putative sub-class of tenure-track faculty members whose employment the University claims to have terminated for financial reasons." *Id.* "Plaintiffs Carty (Mathematics), Johlke (Marketing), Keist (Apparel Production and Merchandising), and Olds (Hospitality Management) are employed as [] tenured faculty at Bradley University and were informed in December of 2023 that their employment would be terminated 'on or after December 15, 2024.'" *Id.* They "seek to represent a putative sub-class of tenured faculty members". *Id.* "Plaintiff Matthew Timm is a Professor of Mathematics at Bradley and representative of the putative class of faculty members to whom the Faculty Handbook assigns primary responsibility in educational and faculty employment status." *Id.* "AAUP-Bradley is an organization of Bradley University faculty members and an advocacy chapter of the American Association of University Professors" that "has associational standing to represent its members in this action" and "seeks declaratory and injunctive relief." *Id.* The Defendant, Bradley, is "a private, not-for-profit organization properly recognized and sanctioned by the laws of the State of Illinois." *Id.* at ECF p. 3.

Plaintiffs are "Bradley faculty members [that] are employed pursuant to appointment contracts, each of which incorporates by reference the Bradley University Faculty Handbook" ("Handbook"). *Id.* at ECF p. 4. As to tenure-track professors, they receive "initial appointment letters" that "specify the tenure application date (typically five years after the initial appointment), the tenure notification date, and the tenure effective date (typically six years after the initial appointment)." *Id.* For both tenure and tenure-track faculty, Bradley incorporates the Handbook into their contracts. *Id.* "[T]enured faculty have a permanent appointment which must be renewed annually unless exigent circumstances specified in the Handbook are present" and "tenure-track faculty are hired with a specific

3

probationary period". *Id.* at ECF p. 5. "The Faculty Handbook provides five exclusive conditions under which the University may terminate the employment of tenured faculty and faculty with probationary appointments before the end of the specified term: (1) termination for cause, such as for incompetence; (2) financial exigency; (3) 'bona fide' discontinuation of a program or department not mandated by financial exigency; (4) an inability to fulfill the terms or conditions of an appointment due to medical condition, or (5) nonrenewal of tenure-track faculty members' annual appointments prior to the end of the probationary period due to inadequate performance." *Id.* at ECF p. 6 (citing Ex. A. pp. 74, 85-86, 100-103). Plaintiffs allege the faculty terminations "resulted from several violations of the Handbook." *Id.* at ECF p. 13.

First, "in making determinations about faculty terminations, President Standifird and Provost Zakahi failed to consult the faculty and failed to provide the deference required to the faculty." *Id.* Second, "the administration terminated the employment of tenured faculty and faculty with probationary appointments before the end of their specified term even though none of the conditions for termination of such appointments . . . existed."[4] *Id.* Third, Bradley failed to follow procedures for program discontinuation and non-renewal of contracts with tenure-track faculty. *Id.* at ECF p. 13-14. Based on these allegations, Plaintiffs filed the instant Complaint alleging Breach of Contract in Count One and Race Discrimination in Count Two on behalf of Professor Azab. (D. 1 at ECF p. 22-25). Bradley has moved to dismiss all Counts pursuant to Rule 12(b)(6). (D. 9 at ECF p. 1).

### III

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides

---

[4] Confusingly, Plaintiffs state that "Bradley has not claimed financial exigency" and that the "only arguably applicable justification for the faculty terminations was 'discontinuation of programs not mandated by financial exigency.'" (D. 1 at ECF p. 13).

that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 665-66 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

### A

In Count One, Plaintiffs claim that Bradley "breached its employment contracts with Plaintiffs and all Class members when it decided to terminate or not renew the contracts of approximately 38 faculty members in violation of the policies and procedures outlined in the Handbook for the termination and nonrenewal of faculty appointments" and when "it made the decision to terminate  appointments before making every effort to place the faculty members concerned in other suitable positions." (D. 1 at ECF p. 22-23). Plaintiffs further allege Bradley violated its duty of good faith and fair dealing and "caused a material breach" when it determined "it had the power to make unilateral decisions about the status of faculty appointments, effectively eliminating tenure and the procedural protections of the Handbook." *Id.*

Bradley has moved to dismiss, arguing that the Plaintiffs have not "adequately plead a breach by the University." (D. 1 at ECF p. 8). For the reasons that follow, the Court finds the Plaintiffs have adequately pleaded a breach of contract.

"To establish a claim for breach of contract under Illinois law, a plaintiff must show: '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 657 (7th Cir. 2024) (quoting *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)). The Defendant challenges the fifth element, arguing that Bradley "complied with provisions set forth in the Handbook which says that the Board of Trustees are the last resort available to the faculty, and whom agreed with the decision to not renew certain faculty positions at issue here."[5] (D. 10 at ECF p. 8). In support of that notion, Bradley claims "there is a general consensus throughout courts around the country to recognize that the 'utmost restraint i[s] appl[ied for] traditional legal rules to disputes within the academic community'" and that there is a "public policy that educational professionals are 'peculiarly capable' of making decisions that are 'appropriate and necessary' for educational institutions to function." *Id.* at ECF p. 9. While it may be true that Bradley receives deference as to educational or academic decisions, the Court doubts that any such leeway would override the application of general contract principles under Illinois law to the breach of contract action that is alleged in Count One. At any rate, awarding deference to Bradley is inappropriate at this juncture because the Court is to draw "all reasonable inferences and facts in favor of the nonmovant" at the Motion to Dismiss stage. *See Vesely*, 762 F.3d at 665-66. That leaves the Court with the competing interpretations of what the alleged contract requires, which is a dispute that is not ordinarily resolved at the Motion to Dismiss stage.

---

[5] Bradley reserves the right to challenge whether "other elements of contract formation are present as to the Handbook, and reserves the right to challenge the existence of a valid and enforceable contract." (D. 10 at ECF p. 8 n.2). Therefore, for purposes of this Motion, the Court assumes the other elements are satisfied.

Bradley argues that the "Board of Trustees is the last available relief afforded to the faculty" and that the Handbook, which Plaintiffs premise their breach of contract claim on, states that "[t]he Board of Trustees will make a final decision [] after study of the Committee's reconsideration." (D. 10 at ECF p. 9). Bradley claims that, "after considering the evidence and the record, the Board of Trustees, as the final decision maker, affirmed the dismissal of the faculty at issue here." *Id.* However, the Plaintiff argues that the contract term Bradley relies on should not be viewed in isolation. (D. 11 at ECF p. 6) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("A contract must be construed as a whole, viewing each provision in light of the other provisions."). And, indeed, that provision is subject to its opening clause which states that "[i]f dismissal or other severe sanction is *recommended*, the President will, on request of the faculty member, transmit to the Board of Trustees the record of the case." (D. 1-14 at ECF p. 123) (emphasis added). That language limits the Court's ability, at this stage, to grant dismissal on the basis Bradley asserts because the Plaintiffs allege the Board *departed* from the faculty's recommendation, "Plaintiffs allege that the Board chucked the faculty determination into a proverbial dustbin". (D. 11 at ECF p. 8). As such, when "the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [] court cannot properly determine on a motion to dismiss." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 526 (7th Cir. 2022).

The Defendant also argues that there is no breach because Bradley's actions were founded in a "bona fide formal discontinuation of a program" based on "education considerations." *See* (D. 10 at ECF p. 9-10). But the Plaintiff alleges the discontinuation of those programs were not bona fide (D. 11 at ECF p. 8-9), and the Court must accept those facts as true at this stage. *See Ashcroft*, 556 U.S. at 678. Further precluding dismissal—and in furtherance of its breach allegations—the Plaintiffs contend the Handbook's language circumscribes the Board's power to act insofar as the Handbook limits the "power of review" to be "exercised adversely only in

exceptional circumstances" for "reasons communicated to the faculty" and that because the faculty "has primary responsibility" for "faculty status", that language circumscribes the Board's power to terminate its faculty. (D. 11 at ECF p. 7). On this point, Plaintiffs challenge not only the Board's authority to terminate faculty under the circumstances, but also the manner in which Bradley allegedly failed to follow the "specific contractual requirements" of communicating with faculty by "engag[ing] in an opaque process that excluded faculty". *Id.* at ECF p. 8. These factual disputes similarly preclude granting the Motion to Dismiss on the grounds Bradley asserts.

Separately, Bradley contends the tenure-track faculty's breach of contract should be dismissed because they were only contracted for nine-month appointments. (D. 10 at ECF p. 11). Bradley argues that each offer letter includes "a nine-month period for each academic year" and that there is no guarantee for tenure-track professors, instead Bradley asserts that "each contract contemplates a 'potential future contract.'" (D. 10 at ECF p. 11) (citing D. 1-2 at ECF p. 42 & D. 1-6, 1-7). Therefore, "absent both a promise to automatic renewal for such annual contracts and no provision in the Handbook setting forth such a right to renewal based upon a consideration other than qualifications, the breach of contract claims of the tenure-track faculty must be dismissed." (D. 10 at ECF p. 12). "Without an expectation of an additional term beyond which the tenure-track professors were contractually hired for . . . there can be no breach of contract claim." *Id.* At the same time, however, Bradley argues in its Reply that "Plaintiffs acknowledge that under five defined circumstances, tenure-track faculty may not be granted a renewed contract" to include the bona fide "program discontinuation" that is "invoked here". (D. 12 at ECF p. 14). In other words, Bradley seems to be arguing there is no expectation to a renewed contract, while also claiming that there is an expectation to a renewed contract subject to the criteria the parties identify in the Handbook. And, indeed, the Plaintiffs contend that Bradley "makes contractual promises to tenure-track faculty members to renew those contracts until tenure review, except under five defined

circumstances." (D. 11 at ECF p. 10). As to those criteria, the Supreme Court of Illinois has held that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 418 (Ill. 1987). Those include a clear "policy statement" that contains a "promise clear enough that an employee would reasonably believe that an offer has been made", that it is disseminated in a way "that the employee is aware of its contents and reasonably believes it to be an offer", and, lastly, "the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Id.* In reviewing the contracts at issue here, the language states, "You will be notified on or before March 1, 2024 of the terms of a potential future contract"; it also states, "Faculty obligations and responsibilities, as well as the freedoms and privileges provided you through this contract, are outlined specifically and in detail in the Faculty Handbook."[6] *See, e.g.,* (D. 1-8 at ECF p. 2); *Brzozowski v. N. Tr. Co.*, 618 N.E.2d 405, 409 (Ill. App. Ct. 1993) ("Therefore, where one intention is expressed in one provision of a contract and a conflicting intention appears in another provision, full effect should be given to the more principal and specific provision, and the general provision should be subjected to such modification or qualification as the specific provisions make necessary."). Accordingly, the contracts plainly incorporate the Handbook's more specific provisions, and the parties appear to agree that the tenure-track faculty's reappointment is subject to the five defined circumstances of the Handbook. *See* (D. 12 at ECF p. 14). That said, the parties disagree whether those circumstances were met in this case, and the Court must draw inferences in favor of the Plaintiffs

---

[6] The Court also notes that all the relevant contracts are not before it. The Plaintiffs acknowledge that some faculty contracts "specify that the appointments are intended to be temporary and do not imply a continued appointment." (D. 1 at ECF p. 6). Bradley does not discuss this provision. Thus, without all the relevant information before it, the Court cannot resolve the tenure-track faculty dispute at the Motion to Dismiss stage.

and accept the facts alleged as true. *Vesely*, 762 F.3d at 665-66. Therefore, the Motion to Dismiss is denied as to the tenure-track faculty.[7]

**B**

In Count Two, the Complaint alleges race discrimination on behalf of Professor Azab, a tenure-track employee. (D. 1 at ECF p. 25). She alleges that on "November 6, 2023, Bradley gave Dr. Azab notice that her appointment would not be renewed beyond May 11, 2024, even while retaining a non-Arab and non-tenure-line sociologist and even while retaining a non-Arab tenure-track professor who started at the same time as Azab." *Id.* And, despite Professor Azab "identif[ying] three courses being offered in the fall semester of 2024 that she could teach and asked if she could teach," she "was told they had already been offered to an adjunct/affiliate." *Id.* Therefore, Count Two alleges that Bradley "deprived Prof. Azab of equal rights in the making, modification and enjoyment of the benefits, privileges, terms and conditions of her contractual relationship with the University because of her race in violation of 42 U.S.C. § 1981." *Id.* The Defendant argues that "Plaintiff Azab provides no details, let alone the necessary 'but for' causation allegations to state a claim under Section 1981."[8] For the reasons that follow, the Court finds that the Plaintiff has adequately stated her claim at this stage.

The Defendant claims that to "state a claim under Section 1981, a plaintiff must allege '(1) [s]he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract.'" (D. 10 at ECF p. 12) (citing *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006)). However, under Rule 8, "a plaintiff need not allege facts

---

[7] In its Reply, Bradley also argues that "Plaintiff Timm does not state a breach of contract claim." (D. 12 at ECF p. 13). However, Bradley spends its time discussing issues related to class certification that do not appear to relate to the Motion to Dismiss. *Id.* Bradley does claim, however, that Plaintiff Timm ought to be dismissed because no breach occurred. *Id.* But, as the Court has discussed, the Court finds the Plaintiffs have alleged breach sufficient to survive the Motion to Dismiss.

[8] The Supreme Court has interpreted the phrase "because of" to mean "but for" causation and the Plaintiff has pleaded she was terminated because of her race. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

10

aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022).[9] "To survive screening or a motion to dismiss, a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Id.* "A litigant's best shot . . . is to explain, in a few sentences, how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because of* her membership in a protected class." *Id.* Plaintiff has done so here. Plaintiff alleges that she was terminated on the "pretext of a budgetary crisis" and "chose to retain a non-Arab tenure track professor who had started at the same time as Dr. Azab" despite the Handbook prohibiting that practice and in light of the fact that Bradley "assigned [a] non-tenure-line faculty member to teach three courses that Dr. Azab applied for and could have taught in the fall semester of 2024." (D. 11 at ECF p. 13). Those allegations are sufficient at this stage, particularly when the Seventh Circuit has held that the "legal analysis for discrimination claims under Title VII and § 1981 is identical." *McCurry*, 942 F.3d at 788. And, more recently in the Title VII context, the Seventh Circuit expressly held that "'I was turned down for a job because of my race' is all a complaint has to say." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024). "Details and proofs come later." *Id.* Similarly, here, to survive the Motion to Dismiss the Plaintiff must allege that she was discriminated against because of her race in a way that concerned the making or enforcement of her contract with Bradley. She has done so here; "Dr. Azab does allege that her employment was terminated 'because of' her race." (D. 11 at ECF p. 15). The Court therefore denies the Motion to Dismiss Count Two. [10]

---

[9] The Court is aware that this case discusses a claim pursuant to Title VII, not § 1981. *Kaminski*, 23 F.4th 777. However, its discussion of the pleading standard under Rule 8 in a related context is still relevant to the Court's analysis here. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical.").

[10] The Defendant asks the Court to dismiss Count Two to the extent Plaintiff "is claiming discrimination under Section 1981 based on her national origin". (D 10 at ECF p. 13). In response, the Plaintiff states that the fact she

**IV**

"If a district court possesses original jurisdiction over one claim, 28 U.S.C. § 1367(a) permits that court to also exercise supplemental jurisdiction over any claim that is 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Preston v. Wiegand*, 573 F. Supp. 3d 1299, 1307 (N.D. Ill. 2021) (quoting *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019)). "Federal courts may, in their discretion, exercise supplemental jurisdiction over a state claim if the state and federal claims 'derive from a common nucleus of operative fact.'" *Id.* (quoting *Hansen v. Bd. of Trs. Of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606-07 (7th Cir. 2008)). Here, while Professor Azab's claims both arise out of her termination by Bradley University in November of 2023, the facts that will be required to prove each claim differ substantially. (D. 1 at ECF p. 25). To prove the § 1981 claim alleged in Count Two, Professor Azab will need to show that her race was a but-for cause of the loss of a legally protected right. *Comcast Corp. v. Na'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). That will require a determination of Bradley's motives for terminating her. By contrast, the breach of contract action will require proving a different set of facts and elements that are not necessary to establishing race discrimination. *Compare Pourghoraishi*, 449 F.3d at 756, *with Yash Venture Holdings, LLC*, 116 F.4th at 657. Therefore, the Court questions whether the two Counts arise from a "common nucleus of operative fact" sufficient to establish jurisdiction over Count 1 of this case.

Furthermore, even assuming a common nucleus of operative fact is present in this case, a district court "may decline to exercise supplemental jurisdiction over a claim" if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1376(c)(2). Indeed, "pendent

---

"is from Egypt adds specificity and context to the claim that Bradley discriminated against her because she is of Arab descent." (D. 11 at ECF p. 15). However, because the Plaintiff explicitly claims she was "terminated 'because of' her race", the Court therefore construes Plaintiff's claim to exclude discrimination on the basis of national origin.

jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). A state issue predominates when it constitutes "the real body of a case" such that the federal issue is a mere "appendage." *Gibbs*, 383 U.S. at 727. "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Id.* at 726. The Court similarly questions whether the state law claims in this case predominate over the federal claim over which this Court has original jurisdiction. The proof required to establish a breach of thirty-eight separate contracts may substantively outweigh the proof required for one Count alleging racial discrimination. *See* 28 U.S.C. § 1376(c)(2). Therefore, the Court directs the Plaintiffs to show cause as to why Count One should not be dismissed either because the two Counts do not arise from a common nucleus of operative fact or because the state law claim in Count One substantially predominates over Count Two. The Plaintiffs' brief in opposition to the show cause Order shall be filed within thirty days of this Order, and the Defendant shall file its Response 30 days thereafter.

## V

For the reasons set forth *supra*, the Motion to Dismiss (D. 9) is denied. The Motion for Stay of Discovery (D. 14) is granted, and discovery shall be stayed until the Court rules on the jurisdictional issues that it has ordered the parties to brief. The Court also stays the deadline for filing an Answer pending resolution of the jurisdictional issues.

*It is so ordered.*

Entered on October 23, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

13